IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATOIL USA ONSHORE
PROPERTIES INC.,

                Plaintiff,

v.                                        CIVIL ACTION NO.   2:14-cv-021169

PINE RESOURES, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment* (Document 22), the *Memorandum of Law in Support of Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment* (Document 23), *Defendant Pine Resources, LLC's Response in Opposition to Plaintiff's Motion for Summary Judgment* (Document 27), *Statoil USA Onshore Properties Inc.'s Reply in Support of Summary Judgment* (Document 30), *Defendant Pine Resources, LLC's Surreply in Opposition to Plaintiff's Motion for Summary Judgment* (Document 73), and *Statoil USA Onshore Properties Inc.'s Supplement to Summary Judgment Record* (Document 74).

In addition, the Court has reviewed *Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment as to Damages and Specific Performance* (Document 76), the *Memorandum of Law in Support of Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment as to Damages and Specific Performance* (Document 77), *Defendant Pine Resources, LLC's Response*

*in Opposition to Plaintiff's Motion for Summary Judgment as to Damages* (Document 82), and *Plaintiff Statoil USA Onshore Properties Inc.'s Reply in Support of Its Motion for Summary Judgment as to Damages and Specific Performance* (Document 84).

The Court has also reviewed *Defendant Pine Resources, LLC's Motion for Summary Judgment on Its Breach of Contract Counterclaim* (Document 78), *Plaintiff Statoil USA Onshore Properties Inc.'s Response to Pine Resources, LLC's Motion for Summary Judgment on Its Breach of Contract Counterclaim* (Document 83), and *Defendant Pine Resources, LLC's Reply in Support of Its Motion for Summary Judgment* (Document 85).   Lastly, the Court has reviewed all attached exhibits for each motion.   For the reasons stated herein, the Court finds that Statoil's motion for summary judgment should be granted, Statoil's motion for summary judgment as to damages and specific performance should be denied as moot, and Pine Resource's motion for summary judgment should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Pine Resources (Pine) owned the mineral interests for a 565 acre tract of land in Barbour County, West Virginia (the Property).   In 2008, PetroEdge, a non-party to this suit, purchased the Marcellus mineral rights of the Property for a purchase price of $479,876.00. (PetroEdge PSA, § 2.1, att'd as Ex. 1 to Compl.) (Document 1-1.)   Pine retained an 18% overriding royalty interest (ORRI).   (*Id.* at § 5.9; Deed, Art. III, att'd as Ex. B to Def.'s Resp) (Document 27-2.)   PetroEdge and Pine entered into a Purchase and Sale Agreement (PSA), notarized on November 7, 2008.   (*See* PetroEdge PSA.)   That agreement provided, among other things, that PetroEdge would apply for a meter tap on a gas transmission line within sixty days of

2

execution of the PetroEdge PSA, spud[1] one well within one year after installation of the meter tap, and spud three wells (including the first well) within five years after installation of the meter tap. (*Id.* at § 5.7.)

After execution of the PSA, PetroEdge twice negotiated for additional time to apply for the meter tap and begin the first well.  (Dec. 10, 2010 Letter, att'd as Ex. 2 to Pl.'s Mot.; Oct. 17, 2011 Letter, att'd as Ex. 3 to Pl.'s Mot.) (Document 22.)  It began drilling one well, the Bumgardner 5-2H, but did not complete the well or begin production.   (Pl.'s Resp. to Def.'s Req. for Admissions, Req. 6, att'd as Ex. G to Def.'s Resp.) (Document 27-7.)  In 2012, PetroEdge sold the Marcellus mineral rights to Statoil.  PetroEdge and Statoil entered into a PSA dated October 12, 2012.  (Statoil PSA, att'd as Ex. J to Def.'s Mot.) (Document 78-10.)  PetroEdge informed Pine of the sale in a letter, explaining that "Statoil is now the Purchaser under the [PetroEdge] PSA" but that PetroEdge would continue to manage the interests during a transition period.  (December 19, 2012 Letter, att'd as Ex. F to Def.'s Resp.) (Document 27-6.)  No additional drilling has taken place, and no oil is currently being produced on the Property.

The provisions in the PetroEdge PSA at issue include the initial identification of the parties, wherein the contract states that it is "between Pine Resources Inc., a West Virginia Corporation ('Seller'), and PetroEdge Energy LLC, a Delaware limited liability company ('Purchaser')." (PetroEdge PSA, at 1) (emphasis in original.)  The previously referenced Section 5.7, titled "Certain Obligations of Purchaser" provides, as relevant:

> (a)      On or before the sixty (60) day anniversary of the Execution Date, Purchaser shall apply for a meter tap on a gas transmission line of Purchaser's choice in Barbour County, West Virginia at a

---

1 The parties dispute the implications of the contract language requiring that the Purchaser 'spud' wells.   Merriam-Webster defines "spud" as "to begin to drill (an oil well)."    *Spud*, Merriam-Webster's Collegiate Dictionary (10th ed. 1998).

3

location to be specified by Purchaser.  The day upon which such meter tap is installed shall be referred to herein as the "Langley Tap Installation Date."

(b)      On or before the one (1) year anniversary of the Langley Tap Installation Date, Purchaser shall spud not less than one (1) well on the Contract Area.   On or before the five (5) year anniversary of the Langley Tap Installation Date, Purchaser shall spud not less than three (3) wells on the Contract Area (provided that, for the avoidance [of] doubt, any well spudded in satisfaction of the obligation described in the preceding sentence shall also be credited towards the obligation described in this sentence).

(PetroEdge PSA § 5.7.)

Section 7.2, titled "Limitation on Actions," provides, as relevant:

(a)      The representations and warranties of the Parties in Articles 3 (except Section 3.7) and 4 and the covenants and agreements of the Parties in Article 6 (*sic*) (except Section 5.4 through 5.9) shall survive the Execution Date for a period of two (2) years.   The representations, warranties, covenants and agreements of Seller in Sections 3.7 and 5.4 shall survive until the close of business 30 days after the expiration of the applicable statutes of limitation (including any extensions thereof) provided that any proceeding or indemnification claim pending on the date of any such termination shall survive until the final resolution thereof.   The remainder of this Agreement shall survive the Execution Date so long as Purchaser holds any interest in the Mineral Rights. Representations, warranties, covenants and agreements shall be of no further force and effect after the date of their expiration, provided that there shall be no termination of any bona fide claim asserted pursuant to this Agreement with respect to such a representation, warranty, covenant or agreement prior to its expiration date.

(*Id.* § 7.2(a).)

Finally, section 8.8, titled "Assignment," provides that:

Any assignment by Seller of all or any part of its rights with respect to the Excluded Mineral Rights or any related interests shall be made expressly subject to the terms and conditions of this Agreement, and such assignment not in compliance with this Section 8.8 shall be void *ab initio*.  Subject to the foregoing, this Agreement shall be

4

binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

(*Id.* § 8.8.)

Statoil initiated this action with a complaint and request for declaratory judgment filed on July 8, 2014. It seeks a declaration that it owes no obligations to Pine Resources under the PetroEdge PSA. Pine Resources filed its answer and counterclaim on August 22, 2014, wherein it asserts claims for breach of contract and specific performance. Statoil filed its motion for summary judgment on November 26, 2014. (Document 22.) In addition to a timely reply, Pine Resources filed a *Motion for Leave to File Supplemental Opposition or Surreply to Motion for Summary Judgment Based Upon New Discovery belatedly Received from Statoil After Pine Resources LLC's Response Deadline* (Document 37) on January 26, 2014. Statoil filed an *Unopposed Motion for Leave to Supplement[ ] Summary Judgment Record* (Document 71) on April 15, 2015. The Court[2] granted both motions in an *Order* (Document 72) entered on April 22, 2015.

On April 29, 2015, Statoil filed its motion for summary judgment as to damages and specific performance (Document 76), and Pine Resources filed its motion for summary judgment on its breach of contract counterclaim (Document 78). All motions are fully briefed and ripe for consideration.

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as

---

2 This case was initially assigned to the Honorable Joseph R. Goodwin. It was transferred to the undersigned on May 5, 2015.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of

credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review.   *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012).   Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion.   *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

Statoil seeks summary judgment on its claim that it is not required to fulfill the drilling requirements contained in the PetroEdge PSA.   It argues that (a) the contract required only that PetroEdge 'spud' wells, not that it complete wells or begin production, and (b) pursuant to Section 7.2 of the PetroEdge PSA, that requirement expired when PetroEdge sold its interest in the mineral

rights. (Pl.'s Mem. at 5–8) (Document 23.) Statoil contends that the contract terms are unambiguous, rendering any consideration of extrinsic evidence inappropriate. (*Id.* at 5.)

In response (and in its own motion for summary judgment), Pine Resources asserts that Statoil is in breach of the PetroEdge PSA because of its failure to drill wells and begin production. (Def.'s Mem. at 3–4) (Document 79.) It argues that the PetroEdge PSA is unambiguous, but that any ambiguity should be construed in its favor based on extrinsic evidence and because PetroEdge drafted the agreement. (*Id.*) Pine Resources argues: (a) that Statoil became the "Purchaser" under the PetroEdge PSA when it acquired PetroEdge's interest in the mineral rights; (b) that Section 8.8 of the PetroEdge PSA binds successors and assigns; (c) that the drilling obligation is a covenant that runs with the land and therefore binds successors and assigns; and (d) that the PetroEdge PSA put timelines in place to ensure prompt production. (*See generally*, Def.'s Resp.) (Document 27.) Even if the PetroEdge PSA did not require Statoil to drill wells, Pine Resources contends that "Statoil should be estopped from disavowing its obligations under the PSA as 'Purchaser,' which it has ratified." (*Id.* at 16.)

Claims alleging breach of an unambiguous contract are "particularly suited for summary judgment disposal" because a court can "ascertain the meaning of the agreement as manifested by its language" and "enforce it as written." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir. 1999); *Fraternal Order of Police, Lodge No. 69 v. Fairmont*, 468 S.E.2d 712, 716 (W. Va. 1996). It is an elementary principle of contract law that courts must give effect to the written terms of a contract that unambiguously expresses the intent of the parties. 11 Williston on Contracts § 30:6 (4th ed.). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will

be applied and enforced according to such intent." *Zimmerer v. Romano*, 679 S.E.2d 601, 610 (W. Va. 2009) (quoting  Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 128 S.E.2d 626 ( W. Va. 1963)).

The Court must first decide as a matter of law whether the contract is ambiguous or not. *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) ("The question as to whether a contract is ambiguous is a question of law to be determined by the court.")   A writing is ambiguous if it is "reasonably susceptible of two different meanings."  *Estate of Tawney v. Columbia Natural Res., LLC*, 633 S.E.2d 22, 28 (W. Va. 2006).   However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous."  *Berkeley County Public Service Dist. v. Vitro Corp. of America*, 162 S.E.2d 189, 200 (W. Va. 1968).

If the language is unambiguous, it "must be construed according to [its] plain and natural meaning."  *Fraternal Order of Police*, 468 S.E.2d at 716.   A court may not use interpretation, construction, or extrinsic evidence to conceive any intention or obligation that contradicts the plain meaning of an unambiguous agreement.  *See Fifth Third Bank v. McClure Properties*, *Inc.*, 724 F.Supp.2d 598, 605 (S. D. W. Va. 2010) (Chambers, J.); *see also Haynes v. DaimlerChrysler Corp.*, 720 S.E.2d 564 (W. Va. 2011) ("It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed" in an unambiguous contract.). "It is also well settled that the words of an agreement should be given their natural and ordinary meaning, because the parties presumably used the words in the sense in which they were generally understood."  *Bennett v. Dove*, 277 S.E.2d 617, 618-19 (W. Va. 1981).   The court "may then properly interpret that contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue."  *Goodman*, 7 F.3d at 1126.

The Court finds the contract language in the PetroEdge PSA to be clear and unambiguous. The introductory section identifies PetroEdge as the "Purchaser." (PetroEdge PSA at 1.) Section 5.7(b) requires the "Purchaser" to spud three wells within five years of the installation of a meter tap. (*Id.*, § 5.7(b).) Section 7.2(a) provides specific expiration dates for certain portions of the PetroEdge PSA. It then provides that "[t]he remainder of this Agreement shall survive the Execution Date so long as Purchaser holds any interest in the Mineral Rights." (*Id.*, § 7.2(a).) Because PetroEdge is the Purchaser, the plain terms of Section 5.7(b) bind only PetroEdge. Section 7.2(a) further emphasizes that the obligations imposed on PetroEdge as the Purchaser in Section 5.7 terminate when PetroEdge no longer holds an interest in the mineral rights.

Pine Resources argues that Section 8.8, which provides that the Agreement "shall be binding upon and inure to the benefit of the Parties [t]hereto and their respective successors and assigns," should be read to modify the other relevant provisions. Because Section 8.8 binds successors and assigns, Pine Resources reasons, "Purchaser" should be read to mean "PetroEdge and its successors and assigns." However, Section 8.8 does not modify the remainder of the contract; it simply provides that successors and assigns are to be bound by the contract terms.

Pine Resources' argument that Statoil should be estopped from disclaiming a duty to spud wells under the doctrine of ratification is likewise unavailing. "[A] contract, if ratified at all, must be ratified as a whole." *Goshorn's Ex'rs v. Cnty. Court of Kanawha Cnty.*, 26 S.E. 452, 455 (W. Va. 1896). The unambiguous terms of the PetroEdge PSA do not require Statoil to spud (much less complete) wells, because those obligations expired when PetroEdge ceased to hold an interest in the Property. A finding that Statoil ratified the contract would not alter its terms.

Having found that the terms of the PetroEdge PSA are clear and unambiguous, the Court

cannot consider extrinsic evidence.   Because the Court finds that the PetroEdge PSA does not require Statoil, as PetroEdge's successor and/or assign, to spud wells, the Court need not consider the parties' remaining arguments regarding the nature and extent of the obligation and the potential remedies.   Accordingly, Statoil is entitled to declaratory judgment, and its motion for summary judgment must be granted.   PetroEdge's motion for summary judgment must be denied.

## CONCLUSION

WHEREFORE, following careful consideration and for the reasons stated herein, the Court hereby **ORDERS** that *Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment* (Document 22) be **GRANTED,** that *Statoil USA Onshore Properties Inc.'s Motion for Summary Judgment as to Damages and Specific Performance* (Document 76) be **DENIED AS MOOT,** and that *Defendant Pine Resources, LLC's Motion for Summary Judgment on Its Breach of Contract Counterclaim* (Document 78) be **DENIED.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:    September 9, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

11