IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **STATOIL USA ONSHORE PROPERTIES INC.** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | C.A. No. 2:14-cv-21169 |
| **PINE RESOURCES, LLC** | § § § | |
| *Defendant.* | § | |

**PROPOSED INTEGRATED PRE-TRIAL ORDER**

Comes now Statoil USA Onshore Properties, Inc. ("Statoil"), by counsel, and Pine Resources, LLC ("Pine"), by counsel, and hereby submit this Proposed Integrated Pre-trial Order pursuant to this Court's Scheduling Order and Local Rule of Civil procedure 16.7.

**Submitted By**:

Plaintiff/Counter-Defendant:  **Statoil USA Onshore Properties, Inc.**

**Attorneys for Plaintiff/ Counter-Defendant:**

Fields Alexander
Joel T. Towner
Beck Redden LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:   (713) 951-3700
Facsimile:   (713) 951-3720
falexander@beckredden.com
jtowner@beckredden.com

Bridget D. Furbee
Steptoe & Johnson PLLC
400 White Oaks Blvd.
Bridgeport, West Virginia 26330
Telephone:   304.933.8117
Facsimile:   304.933.8183
bridget.furbee@steptoe-johnson.com

John J. Meadows
Steptoe & Johnson PLLC
707 Virginia Street East 8th Floor

Post Office Box 1588
Charleston, West Virginia 25326-1588
john.meadows@stepote-johnson.com


Defendant/Counter-Plaintiff:   **Pine Resources, LLC**

**Attorneys
for Defendant/
Counter-Plaintiff:**             David Allen Barnette
Vivian H. Basdekis
Jackson Kelly PLLC
P.O. Box 553
Charleston, WV 25322
Tel:    (304) 340.1000
Fax:    (304) 340-1272
dbarnette@jacksonkelly.com
vhbasdekis@jacksonkelly.com

I.      **Trial Date:**          July 17, 2017, at 9:00 a.m.

II.     **Pretrial Date:**       July 12, 2017, at 10:00 a.m.

III.    **Discovery:**

The parties agree that the discovery deadline has passed, and no additional discovery is outstanding.

Pine notes its objection, identified below, to Statoil's Supplemental Responsive Expert Report of Latham.

IV.     **Amendments to Pleadings:**

The parties agree that no amendments to pleadings are pending.

V.      **Pretrial Motions and Preliminary Legal Issues to be Resolved:**

Statoil:

1.      Motions *in limine* and Motions to Exclude filed by Statoil.

Motion to Exclude the opinion testimony of Timothy J. Gibbons and D. Randall Wright filed by Statoil. Dkt. 116. Both fail the requirements of Federal Rule of Evidence 702 for several reasons. Mr. Gibbons' outlandish multimillion dollar damage opinion has no technical support whatsoever. While Mr. Wright actually did a reservoir analysis, he cherry-picked his data set by selecting hundreds of wells miles away from the Langley Tract and ignoring closer wells with more marginal production. Mr. Wright offers no explanation for why he cherry picked his data, why his data is valid or whether the data from miles away is analogous to the Langley Tract. In addition, both Mr. Gibbons and Mr. Wright have no reliable methodology for determining pricing. Both use New York Mercantile Exchange "NYMEX" pricing, which is inapplicable to

4813-2148-7179.v1

gas sold in West Virginia. And both fail to include known market data about the price of gas. Finally, both experts opine as to damages based on horizontal wells with a 6,800-foot lateral. The contract does not require production from such wells, and neither Mr. Gibbons' nor Mr. Wright offer opinions based on obligations contained in the Pine PSA.

      2. Motions *in limine* and Motions to exclude filed by Pine.

      a.    Pine's Motion to exclude evidence of the sale of the Mineral Rights to Alliance Petroleum Corp. Dkt. 114. Pine's motion to exclude is premised entirely on Statoil's alleged failure to produce documents memorializing the sale. Pine contends Statoil's production of such documents on March 21, 2017 should preclude Statoil using such evidence. Pine was aware of the sale during the time the sale was pending. And the sale documents are not responsive to any of Pine's requests for production. Moreover, the documents did not exist until after the close of discovery. Finally, though Pine focuses on the time between the sale and the production of the documents, Pine ignores that the Court had granted summary judgment to Statoil shortly after the documents came into existence, Statoil produced the documents voluntarily well in advance of trial and only six weeks following the Fourth Circuit's mandate reinstating trial proceedings.

      b.    Pine's motion to exclude the testimony of James Latham. Dkt. 115. Mr. Latham is a reservoir engineer, who conducted an analysis of the likely gas reserves under the Langley Tract and is expected to offer rebuttal testimony as to Pine's hypothetical lost royalties from a failure to produce gas from the three 6,000 foot horizontal wells on which Pine's damages are premised. Pine's motion should be denied because he testimony satisfies Federal Rule of Evidence 702. Mr. Latham is qualified as an expert in knowledge, skill, experience, and training; though only one of the four is required under federal law. Specific geographic expertise is not a requirement. If it were, however, Latham would still satisfy that requirement despite the defendant's misinterpretation of his deposition testimony. While the defendant attempts to cast Latham's methodology as unreliable by contrasting it with the methods of its own experts, this is not a valid basis for exclusion. Latham's techniques satisfy all four *Daubert* factors for reliability and should be admitted.

Pine:

      1. Motions *in Limine* filed by Pine.

      a.    Pine's Motion *in Limine* to Exclude the Testimony of Plaintiff's Expert Witness, James F. Latham, Dkt. 115. Mr. Latham's proposed testimony fails to meet the requirements of Rule 702 and *Daubert*. In stark contrast to Pine's expert, the reports and conclusions rendered by Statoil's expert, Mr. Latham, were based on unsound methodology and inadequate experience with the geographic region at issue. At his deposition, Mr. Latham testified that he has never previously evaluated oil and gas wells in the Appalachian Basin, within Barbour County, elsewhere in West Virginia, or anywhere within Marcellus region. (*See* Latham Dep., p. 17-19.) He has never been asked to provide expert analysis on production within the Appalachian basin until this case nor has he done any reservoir engineering within West Virginia. (*Id.* at 17–18.) In fact, Mr. Latham has never been to Barbour County, the location at the heart of this dispute. (*Id.* at 19.) The particular circumstances of this case require that any expert opinions rendered show a specialized knowledge of West Virginia oil and gas production, and yet, it is clear that Mr. Latham lacks the knowledge and experience with West Virginia wells to provide an opinion that is reliable and useful to this Court. For the reasons more fully set forth in Pine's motion and its summary judgment briefing, Mr. Latham's testimony is based on unsound methodology and

4813-2148-7179.v1

unreliable data, which Mr. Latham admitted does not provide enough information to achieve a high "confidence level" in the results. Among other serious deficiencies, Mr. Latham's calculations are based exclusively on "offset wells." This is precisely the approach rejected by SPEE's Monograph 3 Guidelines for the Practical Evaluation of Undeveloped Reserves and Resource Plays, and the data upon which Mr. Latham exclusively relies in his report is widely-recognized as "not a reliable predictor" of undeveloped well performance in the industry. Indeed, Mr. Latham's calculation of Pine's damages increased by 29% from $685,800 to $888,800 when he added a sixth well to his calculations. In light of these, and other, fundamental deficiencies, Mr. Latham's proposed testimony is unreliable and will not assist the Court in the resolution of the issues for which his testimony is proffered.

    b.  Pine's Motion *in Limine* to Exclude Statoil's Supplemental Discovery Responses, Dkt. 114. The supplemental evidence, which purports to show Statoil's assignment of the disputed interest several years after Statoil's breach of the PSA, is not relevant to the amount of damages owed Pine at the time of breach, and thus, should be excluded pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence. Moreover, these documents, which are part of a much larger transaction, do not indicate how the stated consideration for the assignment of the disputed interest was reached and whether the pending outcome of this case affected the amount allocated for the disputed interest. Further, any probative value of introducing evidence regarding Statoil's assignment to Alliance would be substantially outweighed by unfair prejudice, confusion of the issues, undue delay, and a waste of time under Rule 403. In addition, Statoil's untimely disclosure of the information is prejudicial to Pine and therefore should be excluded under Rule 26(a)(2)(A) and Rule 37(c).

    2. Motions *in Limine* filed by Statoil.

    a.  Statoil's Motion to Exclude the Expert Opinions of Timothy J. Gibbons and D. Randall Wright, Dkt. 116, lacks merit and should be denied because Pine's experts are eminently qualified in their fields and their opinions are based on reliable methodology and sufficient facts and data under Federal Rule of Evidence 702. Furthermore, whether Pine's experts' opinions are grounded in enough bases goes to the weight of the evidence, not its admissibility. This is especially true where, as here, the case will be tried without a jury. For the reasons more fully set forth in Pine's Response [Dkt. 123], Statoil cannot meet the standard for excluding expert testimony.

## VI. <u>Mediation:</u>

    The parties jointly advise that they have mediated twice, first on March 5, 2015 and again on March 30, 2017. Both were unsuccessful. The parties will meet and confer in good faith regarding settlement pursuant to Paragraph 8 of the Court's scheduling order. The Parties will also mediate in good faith on July 7, 2017 with Magistrate Judge Aboulhosn pursuant to the Court's June 16, 2017 Mediation Order, Dkt. 126..

## VII. <u>General Nature of the Claims</u>:

**Pine's Breach of Contract Cause of Action**

Pine (Counter-Plaintiff):

Statoil's breach of its obligations under the Pine PSA is clear and undeniable. It is undisputed that Statoil has "spud" nothing and none of the three required wells are producing. In *Statoil USA Onshore Properties, Inc. v. Pine Resources, LLC*, 2017 WL 203378, *27 (4th Cir. Jan. 18, 2017), the Fourth Circuit entered summary judgment in favor of Pine with respect to Statoil's declaratory judgment claim, thereby rejecting Statoil's claim that it had "no obligations" to Pine under the Purchase and Sale Agreement ("PSA") "other than to pay certain royalty interests, and that Statoil "was not in breach" of the PSA. *Id.* *2, 14, 27. Contrary to Statoil's interpretation of the PSA, the Fourth Circuit expressly found that the PSA set forth "an elaborate production scheme," only one component of which was "spudding obligations." *Id.* *15, 18. Construing the contract as a whole, the Fourth Circuit held that "the Pine PSA's apparent objective was promoting mineral production." *Id.* *15, 18. The Fourth Circuit also noted that "for purposes of . . . the achievement of the [PSA']s objectives," a broad construction "avoids the absurd result of a senseless Pine PSA and Deed." *Id.* * 18. Based on the instructive guidance of the Fourth Circuit's ruling, the PSA as a whole obligated Statoil to produce completed wells, which it failed to do. Pine is thus entitled to recover its lost royalties resulting from Statoil's breach, and all that remains in this matter is for this Court to determine Pine's damages.

Both parties have offered calculations to quantify Pine's damages as a result of Statoil's breach of the PSA. In an expert report prepared for Statoil, Mr. Latham initially concluded that potential damages to Pine, if any, should not exceed $685,800. Mr. Latham amended his report, calculating damages at $888,800. Notably, at the time Statoil executed the Statoil PSA, it allocated a value of $904,000 to the Pine PSA, and it allocated a value of $1,423,970 to the Bumgardner 2H Well. Pine's expert witness, D. Randall Wright, P.E., calculated Pine's damages in an amount not less than $1,846,040. In addition, Timothy J. Gibbons, CPA, on behalf of Pine, calculated Pine's economic damages in the amount of $8,140,290.

In this case, the record clearly establishes that Pine's damages are fixed with reasonable certainty. In determining damages stemming from a breach, "all that is required is a reasonable basis for computing an approximate amount of damages." *Cunningham Energy, LLC*, __ F.Supp.2d __ , Case No. 5:13-cv-00078 (awarding landowner $4.8 million, including oil and gas royalties, where operator failed to drill wells required by contract); *Mollohan v. Black Rock Contracting, Inc.*, 235 S.E.2d 813, 816 (W. Va. 1977). With regard to ascertaining damages, West Virginia law merely requires "reasonable, not absolute, certainty." *See Walter Eng'g Consultants, Inc. v. Allied Corp.*, 674 F. Supp. 1221 (S.D. W. Va. 1987) (applying West Virginia law and holding that recovery can be had for losses where they are "reasonably certain" in character and are the proximate result of . . . breach of contract). Accordingly, the remedy for Statoil's breach is damages.

Statoil (Counter-Defendant):

On November 7, 2008, Pine sold the Marcellus Rights to approximately 565 acres in Barbour County ("Langley Tract") to PetroEdge Energy, LLC for almost a half million dollars. The Marcellus Rights are the rights to extract hydrocarbons from a specified depth under the Langley Tract, known as the Marcellus Formation. Pursuant to an accompanying Purchase and Sale agreement ("Pine PSA") and deed, Pine retained an 18% overriding royalty interest in that formation, in the event minerals were ever produced on the land. PetroEdge subsequently sold the Mineral Rights to Statoil, and Statoil—during the pendency of this litigation—sold the Mineral Rights to Alliance Petroleum Corporation.

4813-2148-7179.v1

Pine seeks by its breach of contract claim approximately $1.8 million in what it claims are lost royalties. Pine claims Statoil was required to complete and produce hydrocarbons from three horizontal wells during the time Statoil owned the Mineral Rights. Pine claims that Statoil is liable for damages for the life of wells Pine alleges should have been developed, although it is undisputed that Statoil no longer owns the Langley Tract Marcellus Rights.

To recover its alleged damages, Pine must prove that Statoil breached obligations in the Pine PSA to spud, complete, and produce hydrocarbons from three horizontal wells with 6,800 feet of lateral length, the wells on which Pine's claim is premised. Pine, however, cannot establish an obligation under the Pine PSA to engage in the drilling program on which its claim is premised.

The Langley Tract is not acreage that is well-suited to economic development, and the Pine PSA contained only limited obligations that gave PetroEdge wide discretion in developing the property. Under the Pine PSA, PetroEdge was obligated to spud three wells following the installation of a meter tap. The contract did not require the completion of any wells, much less any actual gas production. PetroEdge was merely required to spud three wells. A requirement to spud a well is simply a requirement to *begin* drilling. Thus, the PetroEdge PSA did not require the completion of any well, or the production of any gas. Moreover, the contract allowed PetroEdge to spud vertical wells or horizontal wells. It required, at most, that three wells (either vertical or horizontal) be initiated.

Effective September 1, 2012, PetroEdge sold the Marcellus Rights in the Barbour County Tract to Statoil. Statoil thus acquired any obligations that passed to it as PetroEdge's contractual successor. As of the sale to Statoil, PetroEdge had satisfied the obligation as to the first well, having already spud one well on the property. Thus, at most, Statoil was required to spud (begin) two more vertical or horizontal wells. Accordingly, Pine cannot demonstrate that Statoil breached an obligation in the Pine PSA to complete and produce gas from three horizontal wells with 6,800 feet of lateral length.

Rather, any breach of contract claim is limited to whether Statoil was obligated to spud two more wells and the alleged damages caused to Pine by a failure to spud such wells. As Statoil has consistently maintained, Pine has suffered no lost royalty damages from the failure to spud wells. Oil and gas wells can only generate royalties if they are both completed and brought online for production, and Statoil was not obligated to do either. Moreover, assuming Pine had a viable theory for lost royalties from the failure to spud wells, those damages would be consequential in nature. And in the Pine PSA, Pine waived the right to recover consequential damages.

Because Pine has presented a damage model premised on only its wishes to have hydrocarbons produced from three specific horizontal wells, Pine's problems demonstrating a breach of the Pine PSA infect its evidence of damages at every step. For example, and without limitation, Pine cannot demonstrate (1) when its first royalty payment should have occurred; (2) whether it was required to be from a horizontal well; (3) how long that horizontal well was required to be, and therefore how much gas it would likely produce.

Even assuming Pine could evidence such assumptions about its alleged damages, Pine's alleged damages are based on gas prices and gas projections that bear little connection to reality. This dispute involves production of shale gas that Pine believes should have occurred on the

4813-2148-7179.v1

Langley Tract in Barbour County, West Virginia. As articulated in Statoil's motion to exclude Mr. Gibbons and Mr. Wright, Pine claims the gas from the Langley Tract would have been sold at the price of gas offered on the NYMEX. And Pine ignores the low production of wells surrounding the Langley Tract in exchange for wells miles away without any evidenced application to the Langley Tract. Both issues serve to inflate Pine's alleged royalties from any royalties Pine would have received in the marketplace had any party been obligated to undertake Pine's desired drilling program.

Counter-Defendant Statoil reserves the right to supplement this integrated pre-trial order based on any claims or issues that Counter-Plaintiff Pine seeks this Court adjudicate.

VIII. **Issues of Fact and Law**:

    A. **Contested Issues of Fact:**

Statoil:

    **Pine's Breach of Contract Cause of Action**

1. Whether Statoil breached Section 5.7(b) of the Pine PSA;

2. Whether Statoil breached the Pine PSA;

3. Whether Statoil has an obligation under the Pine PSA to spud two wells in addition to the Bumgardner 5-2H well;

4. Whether PetroEdge satisfied the obligations regarding the first well in accordance with Section 5.7b of the Pine PSA;

5. Whether Statoil has an obligation to complete the already spud Bumgardner 5-2H well;

6. If Statoil has an obligation to complete the Bumgardner 5-2H well, whether Statoil must complete the Bumgardner 5-2H well by a particular date, and if so, by when;

7. Whether Statoil has an obligation to complete two wells in addition to the Bumgardner 5-2H well;

8. If Statoil has an obligation to complete two additional wells in addition to the Bumgardner 5-2H well, whether Statoil must complete the two additional wells by a particular date, and if so, by when;

9. If Statoil has an obligation to complete two additional wells, whether such wells may be vertical wells.

10. Whether Statoil has an obligation to extract hydrocarbons from the three wells referenced in Section 5.7(b) of the Pine PSA;

11. If Statoil has an obligation to extract hydrocarbons from the three wells referenced in Section 5.7(b), whether Statoil must extract hydrocarbons by a particular date, and if so, by when;

12. What obligation in the Pine PSA Statoil breached, if any;

13. Whether development of the Langley Tract is a prudent or economical investment.

14. Statoil's liability for alleged breach of contract, if any;

15. Whether Pine has been damaged by any alleged breach of the Pine PSA;

16. Whether any alleged breach of the Pine PSA caused lost royalty damages to Pine;

17. The amount of damages, if any, of alleged lost royalties, including but not limited to the following issues of fact underlying a calculation of alleged lost royalties:

    a. Whether damages are calculated from a hypothetical vertical well or horizontal well;

    b. The minimal lateral length, if any, of any hypothetical well that is the basis of damages;

    c. Whether Pine has established the amount of hydrocarbons likely to be produced from a hypothetical well that Statoil was obligated to produce from pursuant to the Pine PSA, including

        i. Whether production from certain wells in Western and Central Harris County are analogous to hypothetical wells on the Langley Tract;

        ii. What wells should be the basis of determining production from hypothetical wells on the Langley Tract;

        iii. Whether Pine's experts used an appropriate or reliable methodology or followed that analogy for determining production from hypothetical wells on the Langley Tract;

        iv. The initial production of hypothetical wells, production decline rates, and useful well life;

    d. Production from hypothetical vertical wells to be drilled on the Langley Tract;

    e. The appropriate price that the sale of any gas from the Langley Tract would fetch;

    f. The appropriate forecast of future prices for the sale of gas produced from the Langley Tract;

    g. The appropriate deductions for any differentials involved in determining net cashflow projections from hypothetical wells on the Langley Tract;

    h. The appropriate discount rate to determine present value of any future lost royalties;

18. Whether the Langley Tract can produce hydrocarbons in economic quantities;

19. Whether PetroEdge had reason to know that the Langley Tract cannot produce hydrocarbons in economic quantities;

20. Whether Purchaser's performance under the Pine PSA, if any, is impractical;

21. Whether the Purchaser's performance under the Pine PSA is excused by an existing frustration of purpose;

22. Whether the ability of the Langley Tract to produce hydrocarbons or produce hydrocarbons in economic quantities was a basic assumption of the Pine PSA.

23. Whether Pine waived any ability to recover alleged consequential damages;

24. Whether Pine waived any ability to recover alleged lost royalty damages;

Pine:

Pine submits that the facts that are germane to the breach of contract claim are clear and undisputed, as set forth in the summary judgment briefing on record as well as the opinions and orders issued in this case (Dkts. 90, 119). As limited by the Court's recent ruling on summary judgment, the remaining factual dispute centers on extrinsic evidence and whether the intent of the Pine PSA was to require Purchaser to produce three wells, at a minimum, on the subject Property within the specified time period for production (Dkt. 119). If this factual dispute is resolved in favor of Pine, then the only contested issue of fact is the proper calculation of Pine's damages.

B. **Disputed Issues of Law**

Statoil:

**Pine's Breach of Contract Cause of Action**

1. Whether Pine has suffered recoverable damages for failure to spud wells pursuant to Section 5.7(b) of the Pine PSA; *In re Ellison*, 296 F.3d 266, 273 (4th Cir. 2002) (contract damages must reflect what the injured party would have received had the contract been performed); *Prior Oil Well Drilling Co. v. David A. Waldron & Associates, Inc.*, 601 F. Supp. 778 (S.D. W. Va.) (citing Restatement (Second) of Contracts, § 344 (1981) and noting that expectancy damages are tied to the performance required in the contract); Restatement (Second) of Contracts, § 346 (1981) (stating only nominal damages are appropriate where a breach caused no loss or if the amount of the loss is not proved); 24 Williston on Contracts § 64:1 (4th ed. 1976).

2. Whether Pine's alleged lost royalties, if recoverable damages, are consequential damages for failure to spud vertical or horizontal well; *Rice v. Community Health Ass'n*, 118 F. Supp.2d 697, 699-700 (S.D. W. Va. 2000) (citing *Desco Corp. v. Harry W. Trushel Const. Co.*, 413 S.E.2d 85, 89 (W. Va. 1991)); Restatement (Second) of Contracts § 351 cmt. a (1981).

4813-2148-7179.v1

3. Whether Pine's alleged damages are unrecoverable as too speculative; *Walter Eng'g Consultants, Inc. v. Allied Corp.*, 674 F. Supp. 1221, 1224 (S.D. W. Va. 1987) (without factual testimony to support a calculation of future income, the alleged future income was too speculative to be recoverable).

4. Whether recoverable damages are limited to the lesser amount of available forms of performance at Statoil's sole discretion. 25 Williston on Contracts § 66:106 (4th ed. 1976) (the measure of damages for breach of a contract with alternative performances is the value of the alternative that is least onerous to the defendant); Restatement (First) of Contracts § 344 (1932) (The damages for breach of an alternative contract are determined in accordance with the alternative that will result in the smallest recovery); *In re Ellison*, 296 F.3d 266, 273 (4th Cir. 2002) (contract damages must reflect what the injured party would have received had the contract been performed); Prior *Oil Well Drilling Co. v. David A. Waldron & Associates, Inc.*, 601 F. Supp. 778 (S.D. W. Va.) (citing Restatement (Second) of Contracts, § 344 (1981) and noting that expectancy damages are tied to the performance required in the contract); 24 Williston on Contracts § 64:1 (4th ed. 1976).

5. Whether Pine's claim fails in whole or in part by the doctrine of existing impractability or frustration of purpose; *Paxton Lumber Co., Inc. v. Panther Coal Co.*, 98 S.E. 563, 564-567 (W. Va. 1919) (holding existing impracticality (impossibility) barred a Plaintiff's recovery where the parties contracted for the supply of natural resources, but the timber the parties believed to be on the tract did not exist in sufficient quantity); *see also*, *Muhlenberg v. Henning*, 116 Pa. 138 (Pa. 1887) (cited with approval by *Paxton Lumber Co.*, 98 S.E. at 567 and barring a Plaintiff's recovery on a contract for the Defendant to pay a royalty on mined ore because the property lacked sufficient ore for the Defendant to operate the mine profitably).

6. Whether Pine's claims are barred by the doctrine of economic waste; Restatement (First) of Contracts § 346 (1932) Statoil believes that Pine has conceded that it is not entitled to specific performance, for which this defense was primarily pleaded. To the extent Pine still seeks or is abandoning remedies that would implicate the economic waste doctrine, Statoil reserves the right to supplement this portion of the proposed pre-trial order.

7. Whether Pine's claims are barred because Pine has waived its ability to recover consequential damages from a failure to spud wells, such as lost royalty damages. *Dye v. Pennsylvania Cas. Co.*, 35 S.E.2d 865, 888 (W. Va. 1945) (waiver is the voluntary relinquishment of a known right); *Ara v. Erie Ins. Co.*, 387 S.E.2d 320, 323 (W. Va. 1989) (waiver may be established by express conduct).

Pine:

      1.      Whether the Pine PSA, construed as a whole and based on the intent of the parties, requires the development of wells for production. (Dkt. 119.)

      2.      Whether Pine's damages for Statoil's breach of the Pine PSA are ascertainable to a degree of reasonable certainty. *Franklin v. Pence*, 128 W. Va. 353, 36 S.E.2d 505 (1945); *State ex rel. Mundy v. Andrews*, 39 W. Va. 35, 19 S.E. 385 (1894); *Walter Eng'g Consultants, Inc. v. Allied Corp.*, 674 F. Supp. 1221 (S.D. W. Va. 1987) (applying West Virginia law and holding that recovery can be had for losses where they are "reasonably certain" in character and are the proximate result of . . . breach of contract).

    **B.**    **Proposed Stipulations:**

Statoil:

Statoil proposes that the parties stipulate as follows:

1. Pine Resources, LLC has waived its right to recover any special, indirect, or consequential damages as a result of any alleged breach of the Pine PSA.

2. The Parties stipulate that the exhibits listed on the Parties' Joint Exhibit List (attached hereto as Exhibit C) are authentic, and no further foundation is necessary to prove the authenticity of any exhibit on the Parties' Joint Exhibit List.

3. The Parties stipulate that the exhibits listed on the Parties' Joint Exhibit List (attached hereto as Exhibit C), except Exhibit Nos. JX 23; JX 42 – 51; PX 11 – 43; and PX 49 - 52, are admissible for all purposes. This stipulation applies only to the specific exhibits listed by bates range on the exhibit list and does not apply to any document not expressly identified by bates range or any document incorporated by reference, but not otherwise expressly identified by bates range on the Joint Exhibit List. The parties each preserve its right to object (depending on the court's rulings on the motions *in limine*) to the other party's expert reports including any and all exhibits attached thereto.

Pine:

Pine proposes that the parties stipulate as to the admissibility and authenticity of the exhibits jointly submitted by the parties in the Joint Exhibit List (attached hereto as Exhibit C), each preserving, however, its right to object (depending on the court's rulings on the motions *in limine*) on grounds of relevance and admissibility to the other party's expert reports including any and all exhibits attached thereto.

**IX.**    **Witnesses:**

Statoil:

      Statoil expects those witnesses listed on Statoil's Witness List, attached as **Exhibit A** and incorporated by reference, to be called or may be called at trial, live or by deposition as

4813-2148-7179.v1

designated therein. Statoil reserves the right to use the deposition testimony of any witness that is unavailable pursuant to Federal Rule of Evidence 804 and the right to call any witness for rebuttal or impeachment purposes whose testimony cannot be reasonably anticipated before trial.

Pine:

Pine expects those witnesses listed on Pine's Witness List, attached as **Exhibit B** and incorporated by reference, to be called or may be called at trial, live or by deposition as designated therein. Pine reserves the right to use the deposition testimony of any witness that is unavailable pursuant to Federal Rule of Evidence 804 and the right to call any witness for rebuttal or impeachment purposes whose testimony cannot be reasonably anticipated before trial.

**X**. **Exhibits:**

The parties intend to use or offer all exhibits listed on the Joint Exhibit List, attached as **Exhibit C** hereto and incorporated by reference herein. Pine may use or offer the exhibits listed on its Rule 26(a)(3)(A)(iii) disclosure if the need arises, attached hereto as **Exhibit D**. With respect to the exhibits identified in Exhibit D, the Parties expressly stipulate that any objections as to the admissibility, including but not limited to relevance, Rule 403, lack of personal knowledge, improper impeachment evidence, improper opinion evidence pursuant to Rules 701 or 702, hearsay, lack of foundation or authenticity, optional completeness, and best evidence are not waived and may be raised at or prior to trial. The Parties are in the process of assembling an agreed joint exhibit chart and binders for use at trial and will provide a final joint exhibit list in a reasonable time in advance of trial.

To the extent necessary, Statoil objects to inclusion of Exhibit D and exhibits therein not included on Exhibit C. Pine disclosed Exhibit D timely on June 16, 2017. The parties subsequently discussed and drafted the stipulations in Section VIII of this proposed order. The parties are currently working to agree upon a Joint Exhibit List; however, the Joint Exhibit List is not final and Pine informed Statoil a few hours before this filing that it may rely, if needed, on additional exhibits listed in its pre-trial disclosure. Therefore, to the extent the parties' above stipulation—that objections to admissibility are not waived—is not effective for any reason, Statoil objects to the offering of Exhibits not included in the Joint Exhibit List attached as Exhibit C.

Objections to Pre-Trial Disclosures:

Pine:

1. Pine objects to "Statoil's Supplemental Responsive Expert Disclosure and Supplemental Responsive Expert Report of Latham," submitted with its pre-trial disclosures on June 16, 2017. The pre-trial disclosure purports to modify Mr. Latham's calculations of Pine's damages after his deposition and after the close of discovery. Pine further objects on grounds of relevance, reliability, and admissibility because Pine's damages must be calculated at the time of the breach, for the reasons set forth more fully in Pine's briefing on the pending motions *in limine* and on summary judgment with respect to damages. Pine notes its objection to the constantly-changing nature of Mr. Latham's calculations, and further notes that if Pine's expert,

    Mr. Wright, re-did his calculations based on present gas values, Pine's damages would be greater.

2. Pine objects, pursuant to Fed. R. Evid. 702, 703 and 802, to the reports (including all supplemental reports) and underlying data of Statoil's proffered expert witness, Mr. Latham. Pine has moved to exclude Mr. Latham pursuant to Fed. R. Evid. 702 and *Daubert*. In addition, the reports and underlying data of Mr. Latham include unreliable opinions inadmissible pursuant to Rule 702 and inadmissible underlying data that fails the requisites of Rule 703.

3. Pine notes and preserves its objection to Statoil's exhibits denoted with a "phz" file type on the parties' Joint Exhibit List. The "phz" files have been produced to Pine's counsel in a proprietary format that cannot be accessed. Counsel for Pine and Statoil have conferred and are working to obtain the "phz" exhibits in a viewable electronic format and/or in printed copies.

Statoil:

    Statoil objects to Pine's witness list attached as Exhibit B to the extent Pine has purported to disclose as a witness Pine may call being "[a]ny and all persons . . . identified in responses to discovery, depositions, and/or listed in documents produced by any party." Such disclosure is not a separate identification of a witness and does not provide the requisite address and telephone number.

    In accordance with the conditional stipulation in Section VIII.B. of this proposed integrated pre-trial order, Statoil objects to the reports, including all supplemental reports, and underlying data of Pine's proffered expert witnesses Mr. Timothy Gibbons and Mr. D. Randall Wright, including the following exhibits that Pine asserts it will offer or may offer:

    JX23, JX42, JX43, JX44, JX45, JX46, JX50, and JX51

    Each of the foregoing exhibits are purported expert reports or underlying data of Mr. Gibbons and Mr. Wright, whom Statoil has moved to exclude pursuant to Rule 702. Statoil similarly objects to Mr. Wright's and Mr. Gibbons' reports as unreliable and inadmissible pursuant to Rule 702 for the reasons articulated in Statoil's Motion to Exclude. Statoil also objects to Mr. Wright's and Mr. Gibbons' reports and underlying data pursuant to Fed. R. Evid. 802, as the reports and underlying data of Mssrs. Wright and Gibbons are hearsay because they are out of court statements offered to prove the truth of the matters they assert. Statoil also objects to each of the foregoing exhibits pursuant to Rule 703 because they contain inadmissible underlying data that fails the requisites of Rule 703.

### XI. Suggestions Concerning Special Procedures:

Statoil:   Statoil respectfully suggests the trial of this matter should be straightforward, and no special procedures are necessary.

Pine:     None.

4813-2148-7179.v1

## XII.  **Trial and Estimated Time:**

Statoil:

      (A)    Jury Trial:    No

      (B)    Estimated Trial Time (days):  2 – 3 days.

Pine:

      (A)    Jury Trial:    No

      (B)    Estimated Trial Time (days): 2 days.

## XIII.  **Courtroom Technology Requested:**

Both parties anticipate using a system to electronically publish and project exhibits, video, and deposition transcripts. Counsel hereby certify that the technology staff of the Court will be notified no later than (7) days before the scheduled commencement of trial.

Dated: June 23, 2017                                             By Counsel:

BECK REDDEN LLP

*/s/ Fields Alexander*
Fields Alexander [Admitted Pro Hac Vice]
Joel T. Towner [Admitted Pro Hac Vice]
1221 McKinney Street, Suite 4500
Houston, Texas 77010
713.951.3700
713.951.3720 (facsimile)
falexander@beckredden.com
jtowner@beckredden.com

STEPTOE & JOHNSON, PLLC

Bridget D. Furbee
West Virginia State Bar No. 6032
400 White Oaks Blvd.
Bridgeport, West Virginia 26330
304.933.8117
bridget.furbee@steptoe-johnson.com

John J. Meadows
West Virginia State Bar No. 9442
707 Virginia Street, East
P. O. Box 1588
Charleston, West Virginia 25326-1588
304.353-8154
204.353.8180 (facsimile)
john.meadows@steptoe-johnson.com

*Counsel for Plaintiff*

JACKSON KELLY, PLLC

*/s/ David Allen Barnette*
David Allen Barnette (WV 242)
Vivian H. Basdekis (WV10587)
P.O. Box 553
Charleston, WV 25322
304.340.1000
304.340.1272 (facsimile)
dbarnette@jacksonkelly.com
vhbasdekis@jacksonkelly.com

*Counsel for Defendant*

4813-2148-7179.v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT CHARLESTON

| | |
|---|---|
| **STATOIL USA ONSHORE PROPERTIES, INC.** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | **Civil Action No. 2:14-21169** |
| ) | |
| **PINE RESOURCES, LLC** ) | |
| ) | |
| *Defendant*. ) | |

## **CERTIFICATE OF SERVICE**

I, David Allen Barnette, do hereby certify that I electronically filed the forgoing ***Joint Proposed Pre-Trial Memorandum*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants this 23rd day of June, 2017.

Bridget D. Furbee (WV Bar No. 6032)
STEPTOE & JOHNSON PLLC
bridget.furbee@steptoe-johnson.com

John J. Meadows (WV Bar No. 9442)
STEPTOE & JOHNSON PLLC
john.meadows@steptoe-johnson.com

Fields Alexander (TX Bar No. 00783528)
BECK REDDEN LLP
falexander@beckredden.com

Joel T. Towner (TX Bar No. 24083978)
BECK REDDEN LLP
jtowner@beckredden.com

*/s/ David Allen Barnette*
David Allen Barnette (WV State Bar No. 242)